# 24-2275

## 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
### *for the*
## 𝔖𝔢𝔠𝔬𝔫𝔡 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

———

Tiffany Minott,

*Plaintiff-Appellant,*

v.

Google, LLC,

*Defendant,*

Washington Law Firm, PLLC, and The Spiggle Law Firm, P.C.,

*Movants-Appellees.*

On Appeal from a Judgment of the United States District Court, Southern District of New York

## Brief of Movant-Appellee
## Washington Law Firm, PLLC

Stephen Bergstein

Bergstein & Ullrich
5 Paradies Lane
New Paltz, NY 12561
(845) 469-1277

*Counsel for Movant-Appellee Washington Law Firm, PLLC*

# Table of Contents

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Question Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

The district court did not abuse its discretion in granting WLF
a charging lien in the amount of $22,400.00 . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A. Sandard of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B. The district court did not abuse its discretion in setting the hourly
rates. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    1. The district court properly awarded Melissa Washington, Esq.,
      $550 per hour . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    2. The district court properly awarded Ivy Best, Esq.,
      $350 per hour . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    3. The district court properly awarded Kaytyn Palmatier, Esq.
      $250 per hour . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    4. The district court properly awarded Jennifer Davis
      $150 per hour . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

C. The district court did not abuse its discretion in not considering
Plaintiff's "degree of success" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

D. The district did abuse its discretion in holding WLF expended
reasonable hours in representing Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . 22

    1. The district court conscientiously reviewed the lien motion. . . . . . . . . 22

2. WLF did not assign "inexperienced" counsel to work on
the case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

3. WLF did not overstaff the case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

4. The district court did not abuse its discretion in finding there
were no excessive communications about the case . . . . . . . . . . . . . . 32

5. WLF's time entries were not vague . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

6. The time sheets do not reflect improper "block billing" . . . . . . . . . . . . 34

7. The district court did not abuse its discretion in awarding
WLF fees for "clerical work" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

## Table of Authorities

**Cases**

1979 Family Trust Licensor, LLC v. Darji,
　　19-cv-04389 (VEC), 2020 WL 9596279
　　(S.D.N.Y. Sept. 30, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

A.S. on behalf of T.B. v. New York City Dep't of Educ.,
　　23 CIV. 4580 (JPC), 2024 WL 4354894
　　(S.D.N.Y. Sept. 30, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Angulo v. 36th St. Hospitality,
　　19-cv-5075 (GBD) (SLC), 2020 WL 4938188
　　(S.D.N.Y. July 31, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Anthony v. Franklin First Fin., Ltd.,
　　844 F. Supp. 2d 504 (S.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,
　　522 F.3d 182 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Barzilay v. City of N.Y.,
　　20-CV-4452, 2023 WL 2917304 (S.D.N.Y. Apr. 12, 2023). . . . . . . . . . . . . . 13

Blake v. New York City Health & Hosps. Corp.
　　14 Civ. 3340 (JGK) (AJP), 2016 WL 6520067
　　(S.D.N.Y. Nov. 3, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Blum v. Stetson,
　　465 U.S. 866 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Broad. Music, Inc. v. Pamdh Enterprises Inc.,
　　13-CV-2255, 2014 WL 2781846 (S.D.N.Y. June 19, 2014). . . . . . . . . . . . . . 19

Capitol Records, Inc., v. MP3tunes, LLC,
　　07-CV-9931, 2015 WL 7271565 (S.D.N.Y. Nov. 12, 2015) . . . . . . . . . . . . . 19

Cohen v. Grainger, Tesoriero & Ball,
  81 N.Y.2d 655 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Clarke v. Frank,
  960 F.2d 1146 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona,
  07-CV-6304 (KMK), 2021 WL 1222159 (S.D.N.Y. Mar. 31, 2021) . . . . . . . 11

Chrysafis v Marks, 21-CV-2516 (GRB) (AYS),
  2023 WL 6158537 (E.D.N.Y. Sept. 21, 2023) . . . . . . . . . . . . . . . . . . . . . 29, 30

Cullen v. Fliegner,
  18 F.3d 96 (2d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

DeCastro v. City of New York,
  16-cv-3859 (RA), 2017 WL 4556554 (S.D.N.Y. Sept. 30, 2017) . . . . . . . . . 15

Dimopoulou v. First Unum Life Ins. Co.,
  13-CV-7159, 2017 WL 464430 (S.D.N.Y. Feb. 3, 2017). . . . . . . . . . . . . . . . 19

Elisama v. Ghzali Gourmet Deli Inc.,
  14-CV-08333 (PGG) (DF), 2016 WL 11523365
  (S.D.N.Y. Nov. 7, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fields v. Kijakazi,
  24 F.4th 845 (2d Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fox v. Vice,
  563 U.S. 826 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 24

Frazier v. FCBC Cmty. Dev. Corp.,
  22-cv-5270 (AS), 2024 WL 3666372 (S.D.N.Y. Aug. 6, 2024). . . . . . . . . . . 17

Gulino v. Bd. of Educ.,
  96 CIV 8414 (KMW), 2022 WL 1754266
  (S.D.N.Y. May 13, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

iv

H.C. v. New York City Bd. of Educ.,
  71 F.4th 120 (2d Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 22

Hanna v. Walmart Stores, Inc.,
  803 F. Appx. 417 (2d Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Harty v. Par Builders, Inc.,
  12-CV-2246 (CS), 2016 WL 616397 (S.D.N.Y. Feb. 16, 2016). . . . . . . . . . 21

Hensley v. Eckerhart,
  461 U.S. 424 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

HomeAway.com, Inc. v. City of New York,
  523 F. Supp. 3d 573 (S.D.N.Y. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

J.M. v. New York City Dep't of Educ.,
  23-CV-10002 (MMG) (JW), 2024 WL 5047662
  (S.D.N.Y. Dec. 9, 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

J.S ex rel. Z.S. v. Carmel Sch. Dist.,
  10-CV-8021 (VB), 2011 WL 3251801 (S.D.N.Y. July 26, 2011) . . . . . . . . . 32

Johnson v. Ga. Highway Express, Inc.,
  488 F.2d 714 (5th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Kastrati v. M.E.G. Rest. Enters., Ltd.,
  21-cv-00481 (KHP), 2023 WL 180043 (S.D.N.Y. Jan. 13, 2023) . . . . . . . . . 18

Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.,
  13-CV-1526, 2020 WL 2848232 (S.D.N.Y. June 1, 2020). . . . . . . . . . . . . . 19

Lewis v. Am. Sugar Ref., Inc.,
  14-CV-02302 (CRK), 2019 WL 116420 (S.D.N.Y. Jan. 2, 2019) . . . . . . . . . 12

Lilly v. City of New York,
  934 F.3d 222 (2d Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 8

v

Lochren v. Cnty. of Suffolk,
344 F. App'x 706 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Magalios v. Peralta, No. 19-CV-6188 (CS),
2024 WL 1856303 (S.D.N.Y. Apr. 26, 2024) . . . . . . . . . . . . . . . . . . 6, 13, 17

Manson v. Friedberg,
08 Civ. 3890 (RO), 2013 WL 2896971 (S.D.N.Y. June 13, 2013). . . . . . . . . 12

Matagrano v. New York State Dep't of Corr. & Cmty. Supervision,
19-CV-763 (BKS/DJS), 2024 WL 4651768
(N.D.N.Y. Nov. 1, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Matusick v. Erie Cnty. Water Auth.,
757 F.3d 31 (2d Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

McMahon v. Olivier Cheng Catering & Events, LLC,
08 CIV. 8713 (PGG), 2010 WL 2399328
(S.D.N.Y. Mar. 3, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Merck Eprova AG v. Gnosis S.p.A.,
760 F.3d 247 (2d Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Meriwether v. Coughlin,
727 F. Supp. 823 (S.D.N.Y. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Milner v. City of New York,
10 CIV. 9384 (JGK) (GWG), 2012 WL 3138110
(S.D.N.Y. Aug. 2, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Mugavero v. Arms Acres, Inc.,
03 Civ. 05724 (PGG), 2010 WL 451045 (S.D.N.Y. Feb. 9, 2010) . . . . . . . . 13

Munson v. Diamond,
15 CV 00425 (DAB) (BCM), 2017 WL 4863096
(S.D.N.Y. June 1, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

New York v. RAC Holding, Inc.,
135 F. Supp. 2d 359 (N.D.N.Y. 2001)................................ 33

New York State Ass'n for Retarded Children, Inc. v Carey,
711 F.2d 1136 (2d Cir. 1983) ..................................... 27

Ng v. King Henry Realty, Inc.,
16-cv-00013 (PAE) (JCF), 2016 WL 6084074
(S.D.N.Y. Oct. 7, 2016) .......................................... 30

Nnebe v. Daus,
06-cv-04991 (RJS), 2022 WL 6129673
(S.D.N.Y. March 1, 2022) ........................................ 13

Pappas v. Watson Wyatt & Co.,
04 CV 304 (EBB), 2008 WL 45385 (D. Conn. Jan. 2, 2008)............. 27

Pardovani v. Crown Bldg. Maint. Co.,
15-CV-9065, 2023 WL 3597615 (S.D.N.Y. May 23, 2023).............. 13

Parrish v. Sollecito,
280 F. Supp. 2d 145 (S.D.N.Y. 2003) .............................. 12

Pascutti v. New York Yankees,
108 F. Supp. 2d 258 (S.D.N.Y. 2000) .............................. 33

Pennsylvania v. Delaware Valley Citizen's Council for Clean Air,
478 U.S. 546 (1986) .............................................. 8

Penz v. Washer,
18 CV 4964 (VB), 2024 WL 3594572 (S.D.N.Y. July 30, 2024).... 12, 14, 15

Pettiford v. City of Yonkers,
14 CIV. 6271 (JCM), 2020 WL 1331918
(S.D.N.Y. Mar. 20, 2020)....................................... 20, 21

vii

Pig Newton, Inc. v. The Boards of Directors,
    13 CIV. 7312 (KPF), 2016 WL 796840
    (S.D.N.Y. Feb. 24, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Raja v. Burns,
    43 F.4th 80 (2d Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 32, 35

Restivo v. Hessemann,
    846 F.3d 547 (2d Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Rozell v Ross-Holst,
    576 F. Supp. 2d 527 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Rubin v. HSBC Bank USA, NA,
    20-CV-4566 (FB), 2025 WL 248253 (E.D.N.Y. Jan. 21, 2025). . . . . . . . . . . 16

Ryu v. Hope Bancorp, Inc.,
    18-cv-01236 (JSR) (KHP), 2020 WL 9886310
    (S.D.N.Y. March 9, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Safranek v. Wormuth,
    23 CIV. 5985 (JCM), 2024 WL 5186599
    (S.D.N.Y. Dec. 19, 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 16

Sands v. Runyon,
    28 F.3d 1323 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Sanson v. City of New York,
    19 Civ. 2569 (AT), 2021 WL 1191566 (S.D.N.Y. Mar. 30, 2021). . . . . . . . . 15

Sewell v. Bovis Lend Lease, Inc.,
    09 CIV. 6548 (RLE), 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) . . . . . . . 10

Spalluto v. Trump Int'l Hotel & Tower,
    04 CIV. 7497 (RJS) (HBP), 2008 WL 4525372
    (S.D.N.Y. Oct. 2, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Stair v. Calhoun,
     722 F. Supp. 2d 258 (E.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Torres v. City of New York,
     07 Civ. 3473, 2008 WL 419306 (S.D.N.Y. Feb. 14, 2008). . . . . . . . . . . . .  29

Torres v. City of New York,
     18 Civ. 3644 (LGS) (KHP), 2020 WL 6561599
     (S.D.N.Y. June 3, 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17, 25, 26

Torres v. Gristede's Operating Corp.,
     519 F. App'x 1 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

TufAmerica Inc., v. Diamond,
     12-CV-3529, 2016 WL 1029553 (S.D.N.Y. Mar. 9, 2016) . . . . . . . . . . . . . 19

Williams v. Firequench, Inc.,
     21 CV 4112 (PAE) (JLC) 2022 WL 3571752
     (S.D.N.Y. Aug. 19, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Williams v. Epic Sec. Corp.,
     368 F. Supp. 3d 651 (S.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Wise v. Kelly,
     620 F. Supp. 2d 435 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**Statute**

42 U.S.C. § 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

## Statement of Facts

On December 1, 2022, Plaintiff Tiffany Minott retained The Washington Law Firm, PLLC (WLF) to prosecute her employment discrimination claims against her former employer, Google, LLC. (A. 63-64 ¶ 2; A. 138-39). Melissa Washington, Esq., is the managing partner at WLF, having started the firm in 2021. (A. 63 ¶ 1). The contingency fee agreement between Plaintiff and WLF states, "if you terminate our services without good cause, we will be entitled to the reasonable value of our services, that is, payment at our hourly rates." (A. 63-64 ¶ 2; A. 139). The hourly rate in the retainer agreement is $550.00. (A. 139).

Upon commencing its relationship with Plaintiff, 

(A. 63 ¶ 3).

. at ¶ 4.

A. 64 ¶ 6; A. 74-82 [ ]); A. 72 [

; A. 84-95 [

t]).

. (A. 64 ¶ 8). After WLF obtained co-counsel, The Spiggle Law Firm (TSLF),

(A. 64-65 ¶ 9, 11; A.

1

154-55), the Complaint was filed in the Southern District of New York on March 5, 2024. (ECF 1, 5).

However, on March 29, 2024, on Plaintiff's behalf, an attorney from a different law firm, Arcé Law Group, P.C., filed a notice of appearance. (A. 165). Plaintiff terminated WLF's representation "without cause" on April 4, 2024. (A. 65 ¶ 12) (noting that Plaintiff "assured [Washington] that she was grateful for the work our firm had one on her case thus far, but that she had obtained new counsel who she wished to represent her during litigation").

On April 16, 2025, WLF filed a charging lien motion, seeking $35,045.00 for outstanding legal fees. (A. 32-40). In opposition to WLF's motion, Plaintiff did not claim she terminated WLF's services for good cause. *See* A. 106-133 (Plaintiff's memorandum of law argued only that the charging lien request was unreasonable based on excessive hourly rates and unreasonable billing). The district court noted that "Minott terminated WLF 'without cause,' a fact Plaintiff does not dispute." (A. 7).

The district court resolved WLF's charging lien motion on July 24, 2024. (A. 1-22). After the district court (1) set hourly rates for the WLF attorneys, (2) determined "the hours billed are reasonable," and (3) deemed WLF's time records

appropriate and not overstaffed, Judge Garnett granted WLF a charging lien in the amount of $22,400.00. (A. 17-22).[1]

## Question Presented

Did the district court abuse its discretion in granting WLF's charging lien in the amount of $22,400.00?

## Summary of Argument

This case highlights a central principle guiding attorneys' fees/charging lien motions. The district court has such broad discretion to resolve these motions that the Supreme Court has emphasized that the primary goal is dispensing "rough justice" without turning the courts into "green-eyeshade accountants." Yet, in challenging the district court's ruling, Plaintiff objects to the hourly rates of each attorney and staff member employed by WLF, and further challenges nearly every time entry submitted by that law firm. That strategy may be suitable in the district court, but it represents overkill in the Court of Appeals, which defers to the trial court's assessment of the motion and will only reverse upon an abuse of discretion.

The district court carefully resolved WLF's motion for a charging lien. In determining the hourly rate for each timekeeper, the district court rejected as excessive the rates for each of the attorneys. The district court rejected numerous

---

[1] TSLF also filed a charging lien motion (A. 23-25), which is not the subject of this appeal. The district court denied TSLF's motion without prejudice, as the firm asserted its right under the retainer agreement to arbitrate its dispute with Plaintiff. (A. 8-10).

3

hours it deemed non-compensable, whittling down the lien request from $42,150.00 to $22,400.00. The court also addressed Plaintiff's objections to WLF's billing. As case law supports all the district court's rulings, Plaintiff cannot prevail on appeal without highlighting a serious error in the order. But Plaintiff only nitpicks, challenging time entries as "vague" and the product of "block-billing," even objecting to WLF's compensation for .40 and .70 hours of work on two separate tasks. The place for these objections is the district court, not the Court of Appeals. As the trial court did not abuse its discretion nor miscalculate any of the hours, this Court should affirm.

## Argument

### The district court did not abuse its discretion in granting WLF a charging lien in the amount of $22,400.00

#### A. Standard of review.

The determination of an attorney's fees award falls within the district court's discretion because the appropriate amount is "dependent on the unique facts of each case." *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992). This Court therefore evaluates the reasonableness of a fee award for abuse of discretion. *Cullen v. Fliegner*, 18 F.3d 96, 105 (2d Cir. 1994). "As with all aspects of our fee-shifting jurisprudence, we afford district courts broad discretion in awarding attorneys' fees because they are much closer to the details of each individual case and can better determine what is reasonable and appropriate in the fee calculus for

the particular case." *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019); *see also Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 265-66 (2d Cir. 2014) ("Given the district court's inherent institutional advantages in this area, our review of a district court's fee award is highly deferential").

"A district court abuses its discretion when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Fields v. Kijakazi*, 24 F.4th 845, 852 (2d Cir. 2022).

In *Fox v. Vice*, 563 U.S. 826 (2011), the Supreme Court emphasized the deference afforded to trial courts in resolving attorneys' fees motions, noting that (1) "the determination of fees 'should not result in a second major litigation'" and (2) "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Id*. at 838. The Court added, "appellate courts must give substantial deference to these determinations, in light of 'the district court's superior understanding of the litigation.' *We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it*." (*Id*.) (emphasis supplied); *see also Restivo v. Hessemann*, 846 F.3d 547, 589 (2d Cir. 2017) ("Indeed 'abuse of discretion'—already one of the most

deferential standards of review—takes on special significance when reviewing fee decisions").

### B. The district court did not abuse its discretion in setting the hourly rates.

"The determination of reasonable hourly rates is a factual issue committed to the court's discretion, and is typically defined as the market rate a 'reasonable, paying client would be willing to pay.'" *Magalios v. Peralta*, 19-CV-6188 (CS), 2024 WL 1856303, at *2 (S.D.N.Y. Apr. 26, 2024); *see also Safranek v. Wormuth*, 23 CIV. 5985 (JCM), 2024 WL 5186599, at *3 (S.D.N.Y. Dec. 19, 2024) ("Courts retain 'considerable discretion' in determining 'a reasonable hourly rate'") (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 54 (2d Cir. 2014) (one reason district courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case" is "the desirability of avoiding frequent appellate review of what essentially are factual matters").

"When determining attorneys' fees under the lodestar approach, courts apply the forum rule. 'According to the forum rule, courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" *Restivo*, 846 F.3d at 590. "We . . . suggest that the district court consider, in setting the reasonable hourly rate it uses to calculate the 'lodestar,' what a reasonable, paying client would be willing to

pay[.]" *Arbor Hill*, 522 F.3d at 184. In "asking what a reasonable, paying client would do, a district court best approximates the workings of today's market for legal services." *Id*. at 192.

"In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. . . . The district court should then use that reasonable hourly rate to calculate what can properly be termed the 'presumptively reasonable fee.'" *Lilly*, 934 F.3d at 230 (quoting *Arbor Hill*, 522 F.3d at 190). While the *Johnson*-factors consider, *inter alia*, "the time and labor involved," "the novelty and difficulty of the questions," "the amount involved and the results obtained," and "awards in similar cases," *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), these factors are not dispositive. As this Court has held:

> the [Supreme] Court clarified that many of the *Johnson* factors "are subsumed within the initial calculation" of the lodestar (reasonable hours expended multiplied by the reasonable hourly rate), and therefore "cannot serve as independent bases for increasing [or decreasing] the basic fee award," (*i.e.*, the lodestar). Specifically, the Court stated that the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation should be "fully reflected in the number of billable hours recorded by counsel" or "the reasonableness of the hourly rates." As a result, it is inappropriate for a district court to increase or decrease the lodestar figure on account of any of these factors, because they are already accounted for in calculating the

7

reasonable hourly rate or reasonable hours billed to determine the lodestar.

*Lilly*, 934 F.3d at 229 (citing *Blum v. Stetson*, 465 U.S. 866, 898-900 (1984), and *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 478 U.S. 546, 564-65 (1986)); *see also Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 4 (2d Cir. 2013) ("the district court did not abuse its discretion by failing to examine plaintiffs' billing entries in detail or to consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.* before awarding fees and costs"); *Lochren v. Cnty. of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009) (a district court need not "recite and make separate findings as to all twelve *Johnson* factors"). To that end, Plaintiff incorrectly argues that the district court abused its discretion in not "properly apply[ing] the *Johnson* factors." (Pl. Br. at 14).

The district court set the following hourly rates for the WLF attorneys: (1) for Melissa Washington, Esq., $550.00; (2) for Ivey Best, Esq., $350.00; (3) for Katlyn Palmatier, Esq., $150.00 as a law clerk and $250.00 as an attorney; and (4) for paralegal/administrative assistant Jennifer Davis, $150.00. (A. 11-15). These hourly rates are appropriate and not an abuse of discretion. While Plaintiff asserts the district court granted "rates outside of the typical rates awarded in the Southern District of New York" (Pl. Br. at 14), as demonstrated below, the rates set by the district court are in line with recent cases, and to the extent the rates are "on the high end" (*id.*), they are not substantially higher than the accepted range of hourly

rates as to constitute an abuse of discretion, especially in light of the district court's "considerable discretion" on this issue. *Safranek*, 2024 WL 5186599, at *3.

Plaintiff argues that the district court abused its discretion in not citing enough case law in support of WLF's hourly rates. (Pl. Br. at 15-16). However, there is no such requirement in resolving an attorneys' fees motion, and Plaintiff's case for this proposition, *H.C. v. New York City Bd. of Educ.*, 71 F.4th 120 (2d Cir. 2023), merely noted the district court "cited recent cases from the Southern District of New York to determine 'the prevailing market rate[.]'" *Id.* at 126. The other case in Plaintiff's brief, *Hanna v. Walmart Stores, Inc.*, 803 F. Appx. 417 (2d Cir. 2020), noted that the trial court "carefully considered . . . other cases from the District of Connecticut to determine the market rate of counsel[.]" *Id.* at 424. These cases do not require the trial court to consider "multiple cases," and in any event, Judge Garnett's ruling was sufficiently scholarly in setting WLF's hourly rates based on other Southern District cases. (A. 11-15).

### 1. The district court properly awarded Melissa Washington, Esq., $550 per hour.

In challenging her hourly rate, Plaintiff argues that Washington provided no evidence of her litigation experience. (Pl. Br. at 9-10). However, the record shows that, having graduated from law school in 2008, Washington has more than 15 years' experience as a plaintiff-side employment discrimination lawyer and was previously a partner at Outten & Golden, LLP, a respected labor and employment

firm. (A. 65-68 ¶¶ 13-20). *See McMahon v. Olivier Cheng Catering & Events, LLC*, 08 CIV. 8713 (PGG), 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010) (noting that Outten & Golden LLP "are experienced employment lawyers with good reputations among the employment law bar"); *Sewell v. Bovis Lend Lease, Inc.*, 09 CIV. 6548 (RLE), 2012 WL 1320124, at *12 (S.D.N.Y. Apr. 16, 2012) (same). As the district court noted, Washington "has been recognized professionally for her work, is a member of the National Employment Lawyers Association (among other associations), and has had speaking engagements at various employment law conferences." (A. 11) (citing A. 66-68 ¶¶ 15-18) (noting in part that, in recognition of her expertise, Washington has given at least 16 presentations on labor and employment law since 2013 both locally and nationally). She has also published on these topics. (A. 68 ¶ 19). Washington has represented employment discrimination clients before state and federal agencies, as well as in state and federal court and in arbitral forums, having "obtained millions of dollars in recovery for clients through private settlement and litigation." (A. 68 ¶ 20); *see also* A. 66 ¶ 14 ("Since 2021, I have represented clients before the EEOC, the National Labor Relations Board, and in hundreds of private mediations and arbitrations"). In opposing the charging lien, Plaintiff produced no evidence to the contrary.

In the retainer agreement, Plaintiff agreed to compensate Washington in the amount of $550.00 per hour in the event WLF withdrew for good cause, or if Plaintiff terminated WLF's services without good cause. (A. 139). WLF and Plaintiff agreed this amount constitutes "the reasonable value of our services, that is, payment at our regular hourly rates[.]" (*Id*.); *see also id*. (stating that $550.00 per hour is "the fair market value of our work").

In awarding Washington an hourly rate of $550.00, the district court looked to the retainer agreement. (A. 12) (citing *Stair v. Calhoun*, 722 F. Supp. 2d 258, 268–69 (E.D.N.Y. 2010)). Plaintiff recognizes that the retainer agreement provides relevant evidence as to the attorney's hourly rate. (Pl. Br. at 16). As such, the district court's methodology was not an abuse of discretion. "Because the best evidence of the market value of legal services is what people pay for it, that the fees were actually paid in the ordinary course of business, is strong evidence that what the prevailing party is requesting is commercially reasonable." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 07-CV-6304 (KMK), 2021 WL 1222159, at *12 (S.D.N.Y. Mar. 31, 2021); *see also Sands v. Runyon*, 28 F.3d 1323, 1334 (2d Cir. 1994) ("the district court fixed the hourly rate by reference to 'the retainer agreement as well as to an average of the historic fees over the period. It was on this basis that the district court concluded that $110 per hour was a reasonable rate. This determination was a sensible one'"); *Stair*, 722 F.

11

Supp. 2d at 268-69 ("Although a court is not bound by the parties' retainer agreement, it may still use such agreement as guidance in determining the reasonable value of the services provided"); *Parrish v. Sollecito*, 280 F. Supp. 2d 145, 170 (S.D.N.Y. 2003) ("In the absence of language in a retainer agreement indicating that the rates referred to were in some way reduced in light of the financial circumstances of the plaintiff, or for whatever reason not the normal market rate the attorney's receive, the retainer agreement is an appropriate reflection of the reasonable, and expected, hourly rate"); *Munson v. Diamond*, 15 CV 00425 (DAB) (BCM), 2017 WL 4863096, at \*10 (S.D.N.Y. June 1, 2017), *report and recommendation adopted,* 2017 WL 4862789 (S.D.N.Y. Oct. 26, 2017) ("courts may consider the customary billing rate charged by the attorney as well as if there was a rate specified in any retainer agreement") (quoting *Manson v. Friedberg,* 08 Civ. 3890 (RO)*,* 2013 WL 2896971, at \*10 (S.D.N.Y. June 13, 2013).

Even apart from the retainer agreement, Washington's hourly rate falls within the range recently set by the Southern District of New York. "Hourly rates for experienced civil rights attorneys in this District range from $250 to $600." *Penz v. Washer*, 18 CV 4964 (VB), 2024 WL 3594572, at \*5 (S.D.N.Y. July 30, 2024); *see also Lewis v. Am. Sugar Ref., Inc.*, 14-CV-02302 (CRK), 2019 WL 116420, at \*4 (S.D.N.Y. Jan. 2, 2019) ("Courts in this district have approved

hourly rates of $250 to $600 for civil rights attorneys with over ten years of experience") (citing *Mugavero v. Arms Acres, Inc.*, 03 Civ. 05724 (PGG), 2010 WL 451045, at *5 (S.D.N.Y. Feb. 9, 2010); *Blake v. New York City Health & Hosps. Corp.* 14 Civ. 3340 (JGK) (AJP), 2016 WL 6520067, at *5 (S.D.N.Y. Nov. 3, 2016) (collecting cases for the proposition that recent decisions have moved the upper limits for experienced litigators in civil rights and employment law cases to $600)); *Magalios v. Peralta*, 2024 WL 1856303, at *3 ("Judges in this District have noted that 'rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600'") (citing *Pardovani v. Crown Bldg. Maint. Co.*, 15-CV-9065, 2023 WL 3597615, at *3 (S.D.N.Y. May 23, 2023); *Nnebe v. Daus,* 06-cv-04991 (RJS), 2022 WL 612967, at *3 (S.D.N.Y. March 1, 2022); *Barzilay v. City of N.Y.*, 20-CV-4452, 2023 WL 2917304, at *3 (S.D.N.Y. Apr. 12, 2023) (citing cases in which awards for attorneys ranged between $250 and $650)). In addition, WLF submitted an affidavit from an experienced plaintiff-side employment discrimination lawyer, Marjorie Mesidor, Esq., who endorsed this hourly rate based on her experience as managing attorney at Phillips & Associates and as president of the National Employment Lawyers Association, New York chapter. (A. 102-05) ("Mesidor affidavit"). Under these authorities, Washington's hourly rate in the amount of $550.00 is reasonable and not an abuse of discretion.

**2. The district court properly awarded Ivey Best, Esq., $350 per hour.**

Washington's associate, Ivey Best, Esq., also worked on the case. (A. 174-76 [WLF time sheet]). Best graduated from law school in 2020 and previously worked for two other law firms, one in Alabama and the other as an associate attorney for TSLF. (A. 96-97 ¶¶ 2-4). At TSLF, Best charged clients $400.00 to $415.00 for her work, "which clients routinely paid." (A. 97 ¶ 4). At WLF, she charges an hourly rate of $450.00. *Id*. at ¶ 5. Admitted to practice in Alabama and Washington D.C., Best has been admitted *pro hac vice* in various courts, is a member of the National Employment Lawyers Association, and has presented CLE's. *Id*. at ¶¶ 6-9. Having represented clients in the EEOC and the NLRB, since 2020, Best has represented hundreds of clients and recovered millions of dollars through verdicts and settlements. *Id*. at ¶ 10.

In *HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, (S.D.N.Y. 2021), the district court noted that junior associates may recover $200.00 to $350.00 per hour. *Id* at 599 (citing *Torres v. City of New York*, 18 Civ. 3644 (LGS) (KHP), 2020 WL 6561599, at *5 (S.D.N.Y. June 3, 2020) ("Typical rates . . . for Junior Associates . . . [are] more in the range of $200 to $350 per hour depending on experience") (collecting cases), *report and recommendation adopted*, 2020 WL 4883807 (S.D.N.Y. Aug. 20, 2020)); *see also Penz*, 2024 WL 3594572, at *5 ("Hourly rates for experienced civil rights attorneys in this District

14

range from $250 to $600, and hourly rates for less-experienced associates range from $200 to $350, with rates increasing over time"); *Sanson v. City of New York*, 19 Civ. 2569 (AT), 2021 WL 1191566, at *4 (S.D.N.Y. Mar. 30, 2021) ("Rates in this district for junior associates range from $200 to $350 per hour at law firms specializing in civil rights") (citing *Decastro v. City of New York*, 16 Civ. 3859, 2017 WL 4386372, at *6 (S.D.N.Y. Sept. 30, 2017)); *Lewis,* 2019 WL 116420, at *4 ("Courts in this district have approved hourly rates . . . of $200 to $350 for associates"); *Gulino v. Bd. of Educ.*, 96 CIV 8414 (KMW), 2022 WL 1754266, at *4 (S.D.N.Y. May 13, 2016) (collecting cases and finding $350.00 for junior associate is "in line with rates recently awarded in this District" in civil rights cases). The Mesidor affidavit also endorses this hourly rate. (A. 102-05).

Under these authorities, the district court did not abuse its discretion in granting Best an hourly rate of $350.00. On appeal, Plaintiff argues that $350.00 is too high and that courts have awarded attorneys with Best's experience "significantly less" than that amount (Pl. Br. at 11) (citing *DeCastro v. City of New York*, 16-cv-3859 (RA), 2017 WL 4556554 (S.D.N.Y. Sept. 30, 2017), and *Angulo v. 36th St. Hospitality*, 19-cv-5075 (GBD) (SLC), 2020 WL 4938188 (S.D.N.Y. July 31, 2020)). But, as the district court noted, these cases were decided in 2017 and 2020. (A. 13-14). "Given the time that has elapsed between those opinions and now, $350 an hour is a reasonable rate." (A. 14). As courts routinely increase

15

hourly rates due to inflation and the passage of time, *see e.g. Rubin v. HSBC Bank USA, NA*, 20-CV-4566 (FB), 2025 WL 248253, at *3 (E.D.N.Y. Jan. 21, 2025) (collecting cases); *Safranek*, 2024 WL 5186599, at *3; *J.M. v. New York City Dep't of Educ.*, 23-CV-10002 (MMG) (JW), 2024 WL 5047662, at *3 (S.D.N.Y. Dec. 9, 2024), the district court's analysis was not an abuse of discretion.

### 3. The district court properly awarded Katlyn Palmatier, Esq., $150 and $250 per hour.

Katlyn Palmatier, Esq., graduated from law school in 2023 and was admitted to practice in December 2023. (A. 14 n.3; A. 99 ¶ 3). While Plaintiff argues that Palmatier did not provide "satisfactory evidence" of her qualifications (Pl. Br. at 12), her affidavit states that, after completing internships in law school, including at a boutique civil rights law firm and the Legal Aid Society LGBTQ Law and Policy Unit, and working in the litigation clinic (A. 99-100 ¶¶ 3-5), she began working for WLF in May 2023 as a law clerk and later became an associate attorney. (A. 100 ¶ 6). Palmatier worked on Plaintiff's case as a law clerk and attorney. (A. 174-76 [WLF time sheet]).

Law clerks in the Southern District have been awarded $150.00 per hour. *See Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 659 (S.D.N.Y. 2019) ("For the period prior to September 13, 2017, the Court in its discretion reduces her hourly rate to $150, which is consistent with the hourly rate awarded by other courts in this district to law clerks or attorneys not yet admitted to the bar") (citing

*inter alia Elisama v. Ghzali Gourmet Deli Inc.*, 14-CV-08333 (PGG) (DF), 2016 WL 11523365, at \*18 (S.D.N.Y. Nov. 7, 2016) (awarding rate of $120 per hour to "legal clerk" not yet admitted to practice), *report and recommendation adopted*, 2018 WL 4908106 (S.D.N.Y. Oct. 10, 2018); *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 508 (S.D.N.Y. 2012) (awarding hourly rate of $175.00 to attorney when he worked on the case as a "law clerk")); *see also A.S. on behalf of T.B. v. New York City Dep't of Educ.*, 23 CIV. 4580 (JPC), 2024 WL 4354894, at \*7 (S.D.N.Y. Sept. 30, 2024) ($150.00 per hour for law clerk); *Magalios*, 2024 WL 1856303, at \*6 (same).

Under these authorities, the district court properly awarded Palmatier an hourly rate of $150.00 for her work as a law clerk. (A. 15). In arguing that Palmatier deserves a lower hourly rate, Plaintiff cites cases that do not even advocate a significantly lower rate, including *Frazier v. FCBC Cmty. Dev. Corp.*, 22-cv-5270 (AS), 2024 WL 3666372 (S.D.N.Y. Aug. 6, 2024), where, *at the prevailing party's request*, the court awarded the law clerk $125.00 per hour. *Id*. at \*8. It can never be an abuse of discretion for the district court to award an hourly rate recognized by other courts, and only $25.00 more than other courts. Another case in Defendants' brief, *Torres*, 2020 WL 6561599, at \*5, is five years old and must be adjusted for inflation.

17

As for Palmatier's $250.00 hourly rate as an attorney, the district court cited cases awarding that amount for newly-admitted lawyers. *See* A. 15 (citing *Torres*, 2020 WL 6561599, at *5 (awarding $250 an hour for junior associates); *Kastrati v. M.E.G. Rest. Enters., Ltd.*, 21-cv-00481 (KHP), 2023 WL 180043, at *3-4 (S.D.N.Y. Jan. 13, 2023) (awarding $300.00 per hour is reasonable for a junior associate who graduated from law school in 2020 and worked on the matter from December 2020 to February 2021)). While one case in Plaintiff's brief awarded a junior associate $200.00 per hour, the prevailing party did not request a higher rate. *See Williams v. Firequench, Inc.*, 21 CV 4112 (PAE) (JLC) 2022 WL 3571752, at *10 (S.D.N.Y. Aug. 19, 2022). It can never be an abuse of discretion for the district court to adopt an hourly rate that other courts have already endorsed.

### 4. The district court properly awarded Jennifer Davis $150.00 per hour.

Jennifer Davis joined WLF in 2022 as Director of Operations and Administration, handling case management, operations, file collection and organization, scheduling, and distributing settlement funds. (A. 69 ¶ 22). She has over 15 years of program and employment management experience in education, non-profit, and legal sectors. *Id*. at ¶ 23.

As the district court noted, "[c]ourts in this District have found that $150 to $200 is reasonable for paralegal work." (A. 15) (citing *1979 Family Trust Licensor, LLC v. Darji*, 19-cv-04389 (VEC), 2020 WL 9596279, at *1 (S.D.N.Y.

18

Sept. 30, 2020) (citing in turn *Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.,* 13-CV-1526, 2020 WL 2848232, at *7 (S.D.N.Y. June 1, 2020) (noting that judges in the Southern District generally approve paralegals' hourly rates of $150.00 to $200.00 in copyright cases); *Dimopoulou v. First Unum Life Ins. Co.,* 13-CV-7159, 2017 WL 464430, at *3 (S.D.N.Y. Feb. 3, 2017) ("this district typically awards [paralegal] rates not to exceed $200 per hour"); *TufAmerica Inc., v. Diamond*, 12-CV-3529, 2016 WL 1029553, at *6 (S.D.N.Y. Mar. 9, 2016) ("Recent cases in this district suggest that the prevailing rate for paralegals is between $100 and $200 per hour"); *Capitol Records, Inc., v. MP3tunes, LLC*, 07-CV-9931, 2015 WL 7271565 at *4 (S.D.N.Y. Nov. 12, 2015) (describing $200.00 hourly rate for non-attorney personnel as "the high end of rates typically approved in this District"); *Broad. Music, Inc. v. Pamdh Enterprises Inc.*, 13-CV-2255, 2014 WL 2781846, at *6-7 (S.D.N.Y. June 19, 2014) (approving hourly rates of $200.00 for paralegal with 13 years' experience, and $160.00 for paralegal with two years' experience)). The Mesidor affidavit also endorses this hourly rate. (A. 102-05). While Plaintiff cites cases authorizing a lower rate for paralegals (Pl. Br. at 13), in light of the above cases, the district court's hourly rate for Davis is not an abuse of discretion.

**C. The district court did not abuse its discretion in not considering the Plaintiff's "degree of success."**

Plaintiff argues that "the District Court failed to consider that WLF did not obtain any results" for her and that it should have determined "the degree of success obtained by the plaintiff." (Pl. Br. at 15). This argument misunderstands the nature of WLF's charging lien motion.

"New York law generally recognizes three remedies for an attorney making a fee claim against a former client: (1) a charging lien, (2) a retaining lien, and (3) a plenary action in *quantum meruit*." *Pettiford v. City of Yonkers*, No. 14 CIV. 6271 (JCM), 2020 WL 1331918, at *2 (S.D.N.Y. Mar. 20, 2020), *aff'd*, 833 F. App'x 893 (2d Cir. 2020); *see also Milner v. City of New York*, 10 CIV. 9384 (JGK) (GWG), 2012 WL 3138110, at *10 (S.D.N.Y. Aug. 2, 2012), *report and recommendation adopted*, 2012 WL 6097111 (S.D.N.Y. Dec. 10, 2012) ("Under New York law, an attorney's claim against a former client may take any of three forms. First, the attorney may claim a 'retaining' lien on the client's file. Second, an attorney may claim a charging lien, which is an attachment to specific funds that constitute the client's recovery. Finally, an attorney may begin a plenary action in *quantum meruit,* a cause of action that 'can be exercised by the attorney against all of the former client's assets'—not merely against the recovery obtained from a defendant").

WLF sought a charging lien, not a retaining lien or a plenary action on *quantum meruit*. (A. 41, 45-46). The charging lien attaches to the "cause of action" and the "proceeds, wherever found, are subject to it." *Cohen v. Grainger, Tesoriero & Bell*, 81 N.Y.2d 655, 658 (1993). If the case is ongoing, there is no "degree of success" to measure the prior attorney's entitlement to the proceeds. When the district court resolved the lien motion, this case was ongoing.

The one case in Plaintiff's brief in support of her "degree of success" argument is *Harty v. Par Builders, Inc.*, 12-CV-2246 (CS), 2016 WL 616397 (S.D.N.Y. Feb. 16, 2016). But *Harty* is inapplicable since the parties reached a settlement and counsel was not asserting a lien. *Id.* at *1. The other case in Plaintiff's brief, *Pettiford*, noted that, since the case was ongoing, "the actual degree of success cannot be assessed at this time." 2020 WL 1331918, at *8 n.4. *Pettiford* is otherwise distinguishable since, when that motion was resolved, the prior attorney had played a limited role in the litigation, which had proceeded for six years. *Id.* at *8. Minott's case was still in the early stages when WLF sought the charging lien, as the case was filed in March 2024 and the lien ruling issued on July 24, 2024.

### D. The district court did not abuse its discretion in holding WLF expended reasonable hours representing Plaintiff.

"In determining the first component of the lodestar—the number of hours reasonably expended—the district court may exclude hours that are 'excessive, redundant, or otherwise unnecessary.'" *H.C.*, 71 F.4th at 126. "The court may also decrease the total award from the claimed amount because of 'vagueness, inconsistencies, and other deficiencies in the billing records.' To address such redundancy or vagueness, 'the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022). Plaintiff recognizes that the court has discretion to reduce the fee award if the billing records include inappropriate time entries. (Pl. Br. at 17).

### 1. The district court conscientiously reviewed the lien motion.

While Plaintiff argues that Judge Garnett "failed to make a conscientious and detailed inquiry," *id*. at 18, the opposite is true. The district court reviewed the time sheets, (1) determining that WLF had miscounted its hours (A. 16), (2) ruling that WLF cannot recover fees for pursuing the lien motion (A. 16-17), and (3) finding that WLF's time sheets did not show duplicative work, duplicative billing with TSLF, overstaffing, inflated or vague time entries, or improper block-billing. (A. 17-21). The district court's analysis was neither perfunctory nor limited.

22

In claiming Judge Garnett failed to conscientiously review the lien motion, Plaintiff argues that the district court "awarded WLF 100% of the allowable hours that it requested." (Pl. Br. at 18). But an accompanying footnote acknowledges that the district court deducted "17.4 hours of work to which [WLF] was not entitled." *Id*. at n.1. Those hours related to work devoted to the lien motion. (*Id*.) (citing A. 16-17). Even so, there is nothing unusual for a trial court to award counsel fees for all requested hours, and such a ruling does not prove the court failed to properly resolve the motion. Nor was it an abuse of discretion for the district court to accept Washington's sworn statement that she omitted 5-10 excess/duplicative hours from the time sheets. (Pl. Br. at 18) (citing A. 11).

Plaintiff next argues that the district court awarded WLF attorneys' fees for .70 hours of work (totaling $750.00) "████████████████" (Pl. Br. at 18). It is not clear which hours Plaintiff is referring to. ████████████████████

████████ (A. 157). ████████████████████████████████

████████████████████████████████████████████████ (A.

65 ¶ 12). ████████████████████████████████████

████ (*Id*.) Judge Garnett expressly excluded .70 hours from WLF's fee entitlement for Washington's work on the case, for the time period April 5, 2024 to April 16, 2024. (A. 17). If that is the .70 hours to which Plaintiff is referring, ████

████████████████████████████████████████████████

████████████████████████████████ Even if the district court awarded WLF attorneys' fees for .70 hours of ████████████████, that only amounts to $750.00. As district courts are only required to dispense "rough justice" in resolving attorneys' fees motions, *Fox*, 563 U.S. at 838, this is no basis for reversal.

### 2. WLF did not improperly assign "inexperienced" counsel to work on the case.

Plaintiff launches an *ad hominem* attack on Katlyn Palmatier, Esq., claiming this junior associate was "not qualified to perform the tasks for which she billed" ████████████████████████████████ (Pl. Br. at 19-20). Plaintiff does not challenge the professionalism of Palmatier's work ██████████ ████████████████████ (*id.*), both of which are thorough and were prepared under Washington's supervision. (A. 175 [████████████████████████

████████████████████████████████████████

████████████████████ ]). ████████████████████████

████████████████████████████████████████

████████████████████. (A. 84-95). Palmatier devoted ████████████████ ████████████████████████, a reasonable expenditure. (A. 174-75).

While Plaintiff argues that Palmatier was not qualified ████████████ ████████████ (Pl. Br. at 19-20), she was a recent law school graduate awaiting admission to the bar. ████████████████████████, this was time well

spent. Plaintiff further argues this time is non-compensable because she only retained WLF for pre-litigation purposes. *Id.* at 20 (citing A. 138-39 [retainer agreement]). However, Washington stated, without any challenge from Plaintiff, that ███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████ (A. 64 ¶ 7). Washington told Plaintiff that ███████████████████████████████████████████

███████████████████████████████." *Id.* at ¶ 8. Then, after WLF obtained co-counsel, TSLF, to assist with the case, ████████

███████████████████████████████████████████

███████████████████████████████ (A. 64-65 ¶ 9). The Complaint was eventually filed on March 5, 2024. While Plaintiff objects to ████████████████████████████ (Pl. Br. at 20), that amount of time is reasonable for a ██████████████████████

██████.

Plaintiff's objection that WLF cannot recover any fees for Palmatier's work because she was a relatively inexperienced law clerk is meritless. As the district court noted, "it is appropriate, even commonplace, and typically in the client's interest for work to be delegated to more junior attorneys, who perform tasks under the overall supervision of senior attorneys." (A. 18) (citing *Torres*, 2020 WL

25

6561599, at *7 ("[W]ork should be delegated to the most junior person able to perform the task under overall supervision by the lead attorney on the case"). As courts routinely hold as such, *see e.g. Pig Newton, Inc. v. The Boards of Directors of The Motion Picture Indus. Pension Plan*, No. 13 CIV. 7312 (KPF), 2016 WL 796840, at *7 (S.D.N.Y. Feb. 24, 2016) (citing cases), it was not an abuse of discretion for the district court to compensate WLF for Palmatier's work in drafting these documents under Washington's supervision.

### 3. WLF did not overstaff the case.

Plaintiff argues the case was overstaffed and the district court abused its discretion in not reducing the compensable hours even further in light of the "scope, or complexity of Plaintiff's case." (Pl. Br. at 21). As this was a "straightforward" case, Plaintiff argues, the district court did not properly consider why TSLF had to work on the case, resulting in overstaffing. (*Id.*) This argument truly gets into the weeds on the district court's factual and discretionary determination.

Plaintiff second-guesses awarding WLF 

*Id.* at 22. While Plaintiff claims only one attorney was needed for this work (*id.*), the time sheets show that

███████████████████████████████████████

███████████████████████████████████████

███ (A. 175). Plaintiff's other objections are similar: ███████████████

███████████████████████████████████████

███ Pl. Br. at 22). Lawyers routinely recover fees for ████████████

████████████████ This is good case management. As Plaintiff recognizes, "the use of multiple attorneys is not unreasonable per se[.]" *Id.* at 20; *compare Pappas v. Watson Wyatt & Co.*, 04 CV 304 (EBB), 2008 WL 45385, at *6 (D. Conn. Jan. 2, 2008) ("it is common practice for a lawyer to bring along a colleague to assist at a deposition or at a court proceeding. There is no reason why a lawyer representing a Title VII plaintiff should be prevented from practicing in this manner") (citing *New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1146 (2d Cir. 1983) ("prevailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist")).

More broadly, WLF represented Plaintiff for 16 months. ████████████

███████████████████████████████████████

███████████████ From December 1, 2022 to August 2023, ███████████

███████████████████████████████████. Palmatier

███████████████████████████████, and Best ████████

27

███████████ . ████████████████████████

████████████████████████ . (A. 174-76). Further, having 1-2 attorneys on calls with the client, opposing counsel, or co-counsel is not unreasonable. *Houston v. Cotter*, 234 F. Supp. 3d 392, 407 (E.D.N.Y. 2017) (noting that one or two attorneys is appropriate staffing in civil rights cases); *Rozell v Ross-Holst*, 576 F. Supp. 2d 527, 541 (S.D.N.Y. 2008) (two attorneys at important events and hearings was reasonable staffing).

Relatedly, Plaintiff claims the district court overlooked how WLF litigated the case with TSLF, resulting in overlapping time entries. (Pl. Br. at 22-23, 29). Yet, other than noting that multiple attorneys and staff from both law firms worked on the case, other than generally citing to the billing records, Plaintiff's brief does not analyze the purportedly overlapping hours. (*Id.*) Without providing the necessary factual analysis to help this Court wade through the multiple billing entries, *see* A. 174-76, 235-48, Plaintiff advances no reason why the district court abused its discretion. In any event, most of these time entries involve brief correspondence and phone calls between law firms, usually amounting to less than one hour. (*Id.*)

While most of WLF's hours ████████████████████████

████████████████████████████████████████

████████████████████████ . (A. 235-241). As WLF devoted

████████████████████████ (A. 175-76), contrary to Plaintiff's position (Pl. Br. at 29), ████████████████████████████████████ ████████ is not excessive. The remaining TSLF hours primarily focus on client communication and administrative tasks. Simply put, the district court did not abuse its discretion in finding this case was not overstaffed.

Plaintiff argues that both law firms billed ████████████████████ ████████████ (Pl. Br. at 29). While WLF calculates ████████████████████, either amount is reasonable and the district court did not abuse its discretion in awarding WLF fees for its work, despite contributions from TSLF attorneys. As each case is unique, there is no fixed time-frame ████████████████ Even if this Court finds that WLF spent excessive time ████████████████, since a junior associate did much of the drafting, her status as a young lawyer allowed WLF to bill at a lower rate than a senior attorney. Courts recognize that additional hours undertaken by junior attorneys are not problematic since their relative inexperience allows the firm to bill at a lower rate. *See Torres v. City of New York*, 07 Civ. 3473, 2008 WL 419306, at *3 (S.D.N.Y. Feb. 14, 2008) ("[A]n inexperienced attorney's rate is less than that of an experienced attorney's precisely because her inexperience prevents her from completing activities with the same speed and accuracy expected of a more seasoned attorney"); *Chrysafis v Marks*, 21-CV-2516 (GRB) (AYS), 2023 WL 6158537, at *8 (E.D.N.Y. Sept. 21,

29

2023) (criticizing "top-heavy" staffing and suggesting that fee petitions should be reduced when partners, rather than cost-effective associates, bill more hours on less strategic tasks); *Ng v. King Henry Realty, Inc.*, 16-cv-00013 (PAE) (JCF), 2016 WL 6084074, at *7 (S.D.N.Y. Oct. 7, 2016) (new attorneys take longer to perform some tasks, accounted for in their billing rates).

Closer examination of the law firms' time records show minimal overlapping entries ███████████████ During September-October 2023, █████████████████████████████████████████████. As Palmatier was a new associate, while it was expected that she would take longer ████████ ██████ than a more experienced attorney, that is reflected in her lower hourly rate. Washington ██████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████. This time is reasonable ████████████ length and detail.

On December 14, 2023, WLF ████████████████████ ████████████████████████████████████. After ████ ████████████████████████████████████████████ ████████████████████████████████████████████

30

███████████████████. WLF did not engage in duplicative work after engaging co-counsel. Nor did WLF engage in excessive or duplicative billing after retaining co-counsel.

In sum, WLF properly staffed cost-effective associates on time-consuming tasks, like ██████████████████████. Had WLF assigned these tasks to a partner with a much higher hourly rate, it would have invited an objection that an associate with a lower hourly rate should have done the work. But these staffing choices fall within the partner's discretion, and, in the absence of overstaffing or other irregularities, courts typically do not second-guess those choices.

### 4. The district court did not abuse its discretion in finding there were no excessive communications about the case.

Wading further into the weeds, Plaintiff next argues that WLF spent too much time on internal law firm communications. As the district court concluded, "Some internal communications are necessary in representing a client, and the Court finds that the time WLF spent on internal communications is limited and entirely reasonable, considering WLF represented Minott for around a year and a half." (A. 19) (citing *Ryu v. Hope Bancorp, Inc*., 18-cv-01236 (JSR) (KHP), 2020 WL 9886310, at *4 (S.D.N.Y. March 9, 2020), *report and recommendation adopted*, 2020 WL 6287487 (S.D.N.Y. April 10, 2020)). As district courts are

uniquely positioned to make assessments like this, this portion of the ruling is not an abuse of discretion.

### 5. WLF's time entries were not vague.

The district court has discretion to reduce attorneys' fees for vague time entries. *Spalluto v. Trump Int'l Hotel & Tower*, 04 CIV. 7497 (RJS) (HBP), 2008 WL 4525372, at *8 (S.D.N.Y. Oct. 2, 2008) (collecting cases). Plaintiff challenges the following time entries: (1) ████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████ Pl. Br. at 26). The district court recognized these time entries are neither vague nor warrant a reduced charging lien.

The time sheets show ████████████████████████████

████████████ (A. 175). This is hardly vague: these entries show what the timekeeper was doing. "Counsel is not required to 'record in great detail how each minute of his time was expended,' but [s]he must 'identify the general subject matter of his time expenditures.'" *Raja*, 43 F.4th at 87 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)); *see also J.S ex rel. Z.S. v. Carmel Sch. Dist.*, 10-CV-8021 (VB), 2011 WL 3251801, at *6 (S.D.N.Y. July 26, 2011) (the

32

description of the work performed need not be "overly specific" and "[g]eneral descriptions of completed work are sufficient"). While Plaintiff claims Palmatier did not clarify "how much time [she] spent drafting, as opposed to researching" (Pl. Br. at 26), attorneys are often researching and drafting at the same time, making it impossible to provide a more detailed breakdown of the work performed.

As for the ███████████████████████████████████ ██████████████████████████████████████████ (A. 174-76 [entries from ████████████████████████████████]). Most of these time entries are ████████████████████████, and many cover ██████████████████████ ████████████. The other time entries highlighted by Plaintiff are also brief and cannot upset the district court's discretionary ruling. While Plaintiff complains that ████████████████████████████████████" even after ████████████ ████████████████████████" (Pl. Br. at 26), as noted above, Plaintiff ████████ ████████████████████████████████. (A. 64-65 ¶ 9).

Turning to Washington's ████████████████," time entries are reviewed in context with surrounding time entries. *See New York v. RAC Holding, Inc.,* 135 F. Supp. 2d 359, 364-65 (N.D.N.Y. 2001); *Pascutti v. New York Yankees,* 108 F. Supp. 2d 258, 270 (S.D.N.Y. 2000); *Meriwether v. Coughlin,* 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (stating "that in many instances the context of vague entries is made clearer by entries following it").

Washington 

reasonable inference is that Washington

. As the

district court held in rejecting similar objections, "Plaintiff quoted only part of Palmatier's entries in arguing that the descriptions are vague; a review of the time entries themselves provides more detail regarding her work." (A. 20).

Additionally, while Plaintiff is correct that five of Washington's entries (which relate to correspondence conducted by Washington) lack detail, those entries are brief (between .30 and .50 hours) and included enough detail for the Court to ascertain their reasonableness. (A. 20). As the Supreme Court has held, "The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet 'the burden of establishing entitlement to an award.' But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox*, 563 U.S. at 838.

### 6. The time sheets do not reflect improper "block-billing."

"[C]ourts have generally 'ordered such reductions for block-billing only where there was evidence that the hours billed were independently unreasonable or

34

that the block-billing was mixing together tasks that were not all compensable, or not all compensable at the same rate.' . . . [T]hese defects are 'most problematic where large amounts of time (*e.g.*, five hours or more) are block billed' and such lack of specificity 'meaningfully clouds a reviewer's ability to determine the projects on which significant legal hours were spent.'" *Raja*, 43 F.4th at 88-89.

However, block-billing "is by no means prohibited in this Circuit because block billing will not always result in inadequate documentation of an attorney's hours. [The Second Circuit] ha[s] found block billing to be permissible as long as the district court is still able 'to conduct a meaningful review of the hours' for which counsel seeks reimbursement." *Matagrano v. New York State Dep't of Corr. & Cmty. Supervision*, 19-CV-763 (BKS/DJS), 2024 WL 4651768, at *9 (N.D.N.Y. Nov. 1, 2024) (quoting *Restivo*, 846 F.3d at 591, and holding, "while Defendants correctly note that Plaintiff's time entries contain instances of block billing, the block billing is not to such a degree that the Court cannot conduct a meaningful review of the hours").

Plaintiff identifies four instances of block-billing. (Pl. Br. at 26-27). None of these time entries are improper. ███████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████. These time entries are not

so large, and the specific tasks are not so varied, that the district court could not

assess them. As the district court wrote, "WLF's time entries contain very little

block billing," and "the descriptions list multiple small tasks performed as part of

one overall task, and they are specific enough that the Court is able to understand

the entries and determine the reasonableness of the hours billed." (A. 20) (citing

*Wise v. Kelly*, 620 F. Supp. 2d 435, 451 (S.D.N.Y. 2008) (court declined to reduce

time entries that identified tasks conducted related to a single, general task, such as

filing or preparing a brief)).

### 7. The district court did not abuse its discretion in awarding WLF fees for "clerical work."

Plaintiff's scorched-Earth challenge to the district court ruling continues

with an objection that Judge Garnett abused her discretion in awarding Washington

a full hourly rate ██████████████████████████████████. (Pl. Br. at

27-28). Attorneys "should be compensated at the rate for clerical employees, or, if

the task at issue is the type included in overhead, they should not be compensated

at all." *Rozell*, 576 F. Supp. 2d at 540. The difference between Washington's

hourly rate ($550.00) and a clerical employee's rate ($150.00) for this task

amounts to a $160.00, falling within the Supreme Court's "rough justice" framework and the district court's discretion.

## Conclusion

As the district court did not abuse its discretion in awarding WLF a charging lien in the amount of $22,400.00, the district court should affirm.

Dated: February 7, 2025

Respectfully submitted,

*/s/ Stephen Bergstein*

Stephen Bergstein

Bergstein & Ullrich
5 Paradies Lane
New Paltz, NY, 12561
(845) 469-1277
Steve@tbulaw.com

Counsel for Movant-Appellee Washington Law Firm PLLC

37

## Certification

Stephen Bergstein, counsel for Plaintiffs-Appellees, affirms that this brief complies with FRAP 32(a)(7) in that it utilizes non-proportional typeface with no more than 10.5 characters per inch. The font is Times New Roman 14-point. The brief contains 8,933 words.

*s/Stephen Bergstein*

Stephen Bergstein